## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HIGHLAND TANK & MFG. CO., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PS INTERNATIONAL, INC. | ) |
| Defendant. | ) |

CIVIL ACTION NO. 3:04-100

JUDGE KIM R. GIBSON

## MEMORANDUM OPINION AND ORDER

**Gibson, J.,**

Now before the Court is Plaintiff Highland Tank and Manufacturing Company's Motion to Compel Compliance with this Court's June 1, 2006, Order (Document No. 43). Plaintiff and Defendant PS International Inc. have also filed memoranda of law setting forth their positions as to certain issues relevant to this discovery dispute. Document Nos. 55, 56, 59 & 60. The Court conducted hearings on October 23, 2006 (Document No. 46), December 1, 2006 (Document No. 48), January 8, 2007 (Document No. 51), and March 20, 2007 (Document No. 57), and, for the reasons that follow, now orders that Defendant disclose portions of the documents that were the subject of an *in camera* review.

## I.    INTRODUCTION & PROCEDURAL POSTURE

Plaintiff Highland Tank and Manufacturing Company (hereinafter "Highland" or "Plaintiff"), a Pennsylvania corporation, filed its Amended Complaint on December 23, 2004 (Document No. 13), alleging patent infringement, trade secret misappropriation, violations of the Lanham Act, and copyright infringement against Defendant PS International Inc. (hereinafter "PSI" or "Defendant"), a South Dakota corporation. Document No. 13, ¶¶ 2-3, 7-31. Highland claims

1

ownership of U.S. Patent No. 4,722,800 (hereinafter "the '800 Patent"), issued on February 2, 1988. Entitled Oil-Water Separator, the '800 Patent protects a particular oil-water separation apparatus and method. Document No 13, Exh. A. Plaintiff claims that PSI has distributed in the United States systems for separating immiscible liquids, particularly oil-water mixtures, that infringe on the '800 Patent. The two principals of PSI, Gale Sadler (hereinafter "Sadler") and Brett Paulson (hereinafter "Paulson"), formerly sold oil-water separators for McTighe Industries (hereinafter "McTighe") but left that company's employ in June of 1998. Shortly thereafter, McTighe sued Sadler and Paulson in South Dakota for misappropriation of trade secrets. As part of the stipulation of dismissal filed in that case in July 1998, Sadler and Paulson declared that after resigning from Mctighe, they returned to their former employer and no longer possessed any McTighe property.

McTighe was also undergoing bankruptcy proceedings in 1998, and in June 2003, Highland purchased various McTighe assets, including the engineering designs that were the subject of McTighe's suit against Sadler and Paulson, and which Sadler and Paulson had supposedly returned as part of the settlement in the South Dakota litigation. Plaintiff alleges, however, that in 2004, Sadler admitted under oath receiving various McTighe engineering designs, which Highland now claims PSI used to infringe Plaintiff's proprietary information. Document No. 13, ¶ 19. Pursuant to FED. R. CIV. P. 45, Highland then served on various third parties subpoenas for the production of documents issued by the Federal Court for the District of South Dakota. This Court later determined that it lacked jurisdiction to adjudicate Defendant's requests that it quash those subpoenas and issue protective orders. Document Nos. 26 & 31. On August 20, 2005, this Court also denied Defendant's motion to dismiss. Document No. 31.

2

In the wake of those denials, Highland filed a motion to compel discovery on May 18, 2006, seeking interrogatory responses, documents, and privilege logs. Document No. 40. The Court's June 1, 2006, Order on that motion required Defendant to: 1) supplement previously served discovery responses to provide copies of all responsive documents and complete interrogatory responses; 2) provide complete and substantive responses to Highland's Second and Third Sets of Interrogatories and Third Set of Document Requests; and 3) provide complete privilege logs listing all responsive discovery that it had previously withheld on the basis of attorney-client privilege. Document No. 42. The Court also concluded that PSI had waived all objections to Plaintiff's Second and Third Sets of Interrogatories and Third Set of Document Requests. *Id.*

On September 20, 2006, Highland filed a motion to compel compliance with the June 1 Order. Document No. 43. At the October 23, 2005, hearing on that motion, the Parties agreed that the only discovery still outstanding was the privilege logs. Document No. 46. As of January 8, 2007, those logs had still not been turned over (Document No. 51), prompting a Court Order that Defendant produce the privilege logs on or before January 24, 2007 (Document No. 52). Plaintiff produced all of the outstanding discovery by the January 24 deadline, including a privilege log listing forty-nine documents. Document No. 59-2. Of these forty-nine, thirty-four were either subsequently produced or deemed immaterial. The Parties thus reached an impasse regarding fifteen documents over which Defendant claimed either attorney-client privilege or work-product immunity. Document No. 53. Those documents relate to a subpoena issued in the name of the federal court for the District of South Dakota and served upon the law firm of Cutler & Donahoe LLP (hereinafter "Cutler"), counsel for PSI.

3

While the Parties agree that an *in camera* review of the documents is appropriate, they dispute the proper forum or applicable law. At the March 20, 2007, hearing on the matter, Defendant argued that because the fifteen disputed documents are responsive to a previously-served subpoena, the federal court for the District of South Dakota should resolve all relevant matters of privilege under South Dakota state law. Document No. 57. *See also* Document No. 55, pp. 4-5. In contrast, Plaintiff argued that the intervening June 1 Order, as well as interests of judicial economy, make this Court the proper forum for the current discovery dispute. Document No. 57. On March 23, 2007, this Court decided that it would conduct the *in camera* review and ordered Defendant to submit the fifteen disputed documents. Document No. 58. The Court also requested that the Parties file memoranda of law setting forth arguments as to the controlling law. *Id.*

Plaintiff now argues that because the Courts of Appeals for the Third and Eighth Circuits apply identical standards to both attorney-client privilege and work-product doctrine claims, the choice-of-law issue is immaterial. Document No. 59, pp. 1-2. Highland further asserts that most of the fifteen documents do not contain confidential legal advice, but simply report to Sadler and Paulson the progress of the McTighe bankruptcy proceedings. *Id.* at 3. Moreover, Plaintiff claims that by virtue of their date of creation or general content, most of the documents could not have been prepared in anticipation of litigation, a necessary qualification of work product. *Id.* at 3-4. Highland also contends that by failing to object or otherwise respond to the various discovery requests for almost eighteen months, Defendant waived the work-product and attorney-client protections that they now assert. *Id.* at 4. Lastly, Plaintiff argues that because the documents it now seeks helped facilitate PSI's infringement of the '800 Patent, they are discoverable under the

4

crime-fraud exceptions to both the work-product doctrine and the attorney-client privilege. *Id.* at 5.

In contrast, Defendant insists that it has timely raised the relevant objections, that this Court is obligated to apply the South Dakota law of privileges and protections because the disputed documents are encompassed by the subpoena issued in that state, and that the documents Plaintiff seeks have been validly withheld under South Dakota's work-product and attorney-client doctrines. Document No. 60.

## II.   ANALYSIS

### A. Applicable Law

As an initial matter, the Court finds that applying the Eighth Circuit's law of privilege and protection would not necessitate reference to South Dakota state law. While Defendant cites *Brennan v. Western National Mutual Insurance Co.*, 199 F.R.D. 660 (D.S.D. 2001), for the proposition that a federal court in South Dakota would look to state law in the dispute *sub judice*, it fails to note that *Brennan* was a diversity case. *Brennan*, 199 F.R.D. at 662. In contrast, protection from discovery in federal-question cases are governed by federal common law. *In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994) ("The federal common law of attorney-client privilege applies to this civil RICO action" (citing *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987))). In *von Bulow*, the Second Circuit held that federal law of privileges applies to discovery disputes in federal actions, even when the discovery sought is also relevant to state claims over which the Court exercises supplemental jurisdiction. *von Bulow*, 811 F.2d at 141. This principle reflects the majority view among federal courts and has been adopted in both the Third and Eighth Circuits. *See, e.g., Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000); *In re Bieter*, 16 F.3d at 935;

5

*Pucket v. Hot Springs Sch. Dist. No. 23-2*, 239 F.R.D. 572, 579-80 (D.S.D. 2006) (applying federal privilege law in a § 1983 action); *Weiss v. County of Chester*, 231 F.R.D. 202, 205 n.19 (E.D. Pa. 2004) (listing cases); *Titan Sports v. Turner Broad. Sys.*, 967 F. Supp. 142, 144-45 (W.D. Pa. 1997) *rev'd on other grounds*, 151 F.3d 125 (3d Cir. 1998). Moreover, federal law governs work-product claims in actions under both 28 U.S.C. § 1331 and § 1332. *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988) ("[T]he work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in FED. R. CIV. P. 26(b)(3).")

Given that the Court must therefore apply federal law of attorney-client privilege and work-product protection, the question remains whether it should apply that law as interpreted by the Eighth Circuit or the Third. Though the Court agrees with Defendant that the documents at issue come within the purview of the subpoena issued in the District of South Dakota, it cannot find that Eighth Circuit law therefore applies. PSI argues that "[c]ases in which a federal District Court is asked to determine the appropriate privilege to apply uniformly find that the Circuit from which the subpoena *issued* shall apply." Document No. 60, p. 3 (citing *In re Ramaekers*, 33 F. Supp. 2d 312, 316 (S.D.N.Y. 1999)). However, as another district court has noted, "In [*Ramaekers*], and in each of the cases cited by that court, the courts were called upon to address issues of privilege and/or compliance with a subpoena where a subpoena was issued from the jurisdiction within which the court was sitting." *New York v. Microsoft Corp.*, No. 98-1233, 2002 U.S. Dist. LEXIS 7684, at *6 (D.D.C. Apr. 8, 2002). The *Microsoft* court went on to distinguish itself from *Ramaekers* because "the relevant subpoena in this case did not originate in this jurisdiction" and held that it would not "abandon the D.C. Circuit's binding precedent in favor of precedent from [another] Circuit." *Id*. at

\*\*7-8.

The Court finds *Microsoft*'s reasoning persuasive, in part because the *Ramaekers* court was itself animated by the notion that "[c]hoice of law analysis is generally inappropriate in federal question cases, such as the instant action, where the choice involves the law of two or more circuits." *In re Ramaekers*, 33 F. Supp. 2d at 315. Further assurance is taken from the consensus among district courts of this circuit that the law of the transferee court applies in cases transferred under 28 U.S.C. § 1407. *See, e.g., In re Cmty. Bank of N. Va.*, 467 F. Supp. 2d 466, 474 (W.D. Pa. 2006); *In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 486 (E.D. Pa. 2005); *In re Nazi Era Cases Against German Defendants Litig.*, 320 F. Supp. 2d 204, 214 (D.N.J. 2004); *In re Reliance Secs. Litig.*, 135 F. Supp. 2d 480, 501 (D. Del. 2001); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 86 F. Supp. 2d 481, 484 (E.D. Pa. 2000); *see also In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 391 F.3d 907, 911 (8th Cir. 2004); *In re Donald Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.8 (3d Cir. 1993) (assuming without deciding that the law of the § 1407 transferee district controls federal questions). The Court will therefore proceed under Third Circuit precedent.[1]

## B. Attorney-Client Privilege

As articulated by the Third Circuit,

> Communications are protected under the attorney-client privilege when: (1) legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his insistence permanently protected (7) from

---

[1] The Court also notes that the Third and Eighth Circuits have articulated nearly identical versions of the attorney-client privilege and the work product doctrine. *Compare Simon v. G.D. Searle & Co.*, 816 F.2d 397, 404 n.7 (8th Cir. 1987) (citing Wigmore's formulation of the attorney-client privilege) *and PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002) (discussing the work product doctrine) *with In re Grand Jury Proceeding Impounded*, 241 F.3d 308, 316 n.6 (3d Cir. 2001) (citing Wigmore's formulation of the attorney-client privilege) *and Haines v. Liggett Group, Inc.*, 975 F.2d 81, 94 (3d Cir. 1992) (discussing the work-product doctrine).

disclosure by himself or by the legal advisor, (8) except the protection may be
waived.

*In re Grand Jury Proceeding Impounded*, 241 F.3d 308, 316 n.6 (3d Cir. 2001) (citation and
alterations omitted). "'The burden of proving that the (attorney-client) privilege applies is placed
upon the party asserting the privilege.'" *In re Grand Jury*, 603 F.2d 469, 474 (3d Cir. 1979) (citing
*United States v. Landof*, 591 F.2d 36, 38 (9th Cir. 1978)).

The Court first finds that Defendant did not waive any attorney-client privilege. While this
discovery dispute has been simmering since at least May 2006, the Court's previous Orders,
although requiring that Defendant produce the privilege logs, have made allowance for the assertion
of applicable protections. Document No. 42, p. 2; Document No. 52. Furthermore, there is no
dispute that the documents over which Defendant asserts the attorney-client privilege—Control
Nos. 3, 4, 6, 10-12, 17, 32-35 and 37—are communications between an attorney and his clients.
Highland instead argues only that many of the documents are generic communications unrelated to
the provision of legal advice and that, regardless, they are discoverable under the crime-fraud
exception.

Keeping in mind the applicable standard, the Court's *in camera* review indicates that
Control Nos. 3, 4, 6, 10, 17, 32, 33, 34, and 37 all meet the requirements for attorney-client
privilege. Each of those documents contains information exchanged in order to facilitate the
professional relationship between an attorney and his client with regard to ongoing or potential
legal proceedings. Accordingly, these documents are privileged unless (1) PSI was committing or
intending to commit a fraud or crime, and (2) their attorney-client communications were in
furtherance of that alleged crime or fraud. *In re Grand Jury Investigation*, 445 F.3d 266, 274 (3d

8

Cir. 2006).

As the party seeking discovery, it is Highland's burden to "present evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception [are] met." *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 95-96 (3d Cir. 1992). Plaintiff argues that because

> Sadler and Paulson retained [Cutler] a month or more before they quit McTighe; the law firm created PSI while Messrs' Sadler and Paulson were still working at McTighe; and the law firm represented Messrs. Sadler and Paulson in the lawsuit brought by McTighe, in negotiations to buy McTighe assets, and in this lawsuit . . . . the law firm may well have wittingly or unwittingly assisted Messrs. Sadler and Paulson in stealing McTighe's valuable trade secrets and other property.

Document No. 56, p. 5. A litigant may not defeat the attorney-client privilege with reference to such coincidences of timing, however. Evidence that PSI "knowingly [sought] legal counsel to further a continuing or future crime" is required. *U.S. v. Doe*, 429 F.3d 450, 454 (3d Cir. 2005). While Highland alleges that Paulson and Sadler improperly acquired McTighe's proprietary information, its general claim that the communications at issue "may well have been in furtherance of this ongoing tort" (Document No. 59, p. 5) is too tenuous to satisfy the demands of the *prima facie* requirement.

The Court cannot find, however, that PSI has satisfied the element of the attorney-client privilege with regard to Control Nos. 11, 12, 31, and 35. The first two indeed contain a variety of communication too generic to be considered legal advice. With the exception of the four draft letters dated June 29, 1998 and June 30, 1998, Defendant has also not adequately articulated the particular quality of the content of Control Nos. 31 and 35. Those documents mostly contain groups of hand-written notes, some of which may reflect conversations with either Sadler or

9

Paulson. However, it is not obvious from the content of these documents that Cutler attorney Brian Donahoe (hereinafter "Donahoe") was in fact transcribing conversations that either client or counsel preferred to remain confidential. Given the uncertainty, the Court cannot find that Defendant has met its burden of establishing privilege with regard to Control Nos. 31 and 35. Lastly, PSI has not asserted the attorney-client privilege over Control Nos. 15 and 16. Thus, Control Nos. 11, 12, 15, 16, 31, and 35 must be discovered unless they qualify as attorney work product.

## C. Work-Product Doctrine

According to FED. R. CIV. P. 26(b)(3),

> a party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Without such a showing, certain documents prepared in anticipation of litigation are not discoverable. However, the party opposing discovery bears the initial burden of proving that the material in question was in fact prepared in anticipation of litigation. *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000) (citing *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 94 (3d Cir. 1992)). To determine whether the burden has shifted to the proponent of discovery, courts in this circuit ask "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Investigation*, 599 F.2d 1224, 1229 (3d Cir. 1979). *See also Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3d Cir. 1993). Blanket assertions are not enough to shift the burden to the party seeking discovery. *S. Union Co.*

10

*v. Sw. Gas Corp.*, 205 F.R.D. 542, 549 (D. Ariz. 2002) (relying on *Holmes*). Moreover, that the author of a document actually anticipated litigation is not enough to trigger the protection; the work product doctrine "only protects documents prepared in anticipation of litigation, not in the regular course of business." *Leach v. Quality Health Servs.*, 162 F.R.D. 499, 502 (E.D. Pa. 1995) (citing *Raso v. CMC Equip. Rental*, 154 F.R.D. 126, 128 (E.D. Pa. 1994)). *See also* CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2024 (1994) ("[E]ven though litigation is already in prospect, there is no work-product immunity for documents prepared in the regular course of business rather than for purposes of the litigation.").

Of the six documents at issue, four were clearly not prepared in anticipation of litigation. Control No. 11 is a letter from Donahoe to Paulson and Sadler written almost a year after McTighe's claim against the two was dismissed. Control No. 12 consists of two letters that Donahoe wrote immediately after that dismissal. In reference to the handwritten notes listed as Control No. 15, Defendant only states that they were created with regard to "general corporate matters with a description of corporate matters needing attention and offer to purchase by Highland Tank." Document No. 59-2, p.3. In support of its work-product claim for the handwritten notes listed as Control No. 16, PSI claims that they regard a "potential offer to purchase PS International by Highland Tank." *Id.* Thus, Defendant does not even claim that Control Nos. 15 and 16 were prepared in anticipation of litigation. The Court must therefore compel the disclosure of Control Nos. 11, 12, 15, and 16.

Control Nos. 31 and 35 each contain a number of hand-written notes created at various times. Because the claim for injunctive relief that McTighe brought against Paulson and Sadler was dismissed on July 13, 1998 (Document No. 13), the Court finds the notes contained in Control No.

11

35, none of which predate July 13, 1998, could not have been prepared in anticipation of litigation.

For the most part, the same is true for Control No. 31. That batch of documents, however, contains some notes that do predate the July 13, 1998, dismissal and some that obviously relate to Defendant's trial strategy. For that reason, the Court finds that the work-product doctrine does protect the following pages: 1) That which contains the headings "Confidential Relationship Theory" and "Strategies for Defense"; 2) the two pages under the heading "Response to Complaint"; 3) the June 22, 1998 Personal Data Sheet; 4) the page headed "Gale Paulson TC 7/2/98"; 5) the page headed "Quotes 6/20/98"; 6) the page headed "Gale Paulson 6/24/98"; 7) the page headed "McTighe Industries, Inc. Ch. 11 6/22/98" and the page following; and 8) the page dated 6/17/98. These pages shall be protected from discovery.

## III.   CONCLUSION

Pursuant to its *in camera* review and applicable legal principles, the Court finds that the following documents are protected from discovery under the attorney-client privilege: Control Nos. 3, 4, 6, 10, 17, 32, 33, 34, 37, and the four draft letters contained in Control No. 31, dated June 29, 1998, and June 30, 1998. Moreover, the following excerpts from Control No. 31 constitute protected work product: 1) The page containing the headings "Confidential Relationship Theory" and "Strategies for Defense"; 2) the two pages under the heading "Response to Complaint"; 3) the June 22, 1998 Personal Data Sheet; 4) the page headed "Gale Paulson TC 7/2/98"; 5) the page headed "Quotes 6/20/98"; 6) the page headed "Gale Paulson 6/24/98"; 7) the page headed "McTighe Industries, Inc. Ch. 11 6/22/98" and the following page; and 8) the page dated 6/17/98. These documents need not be produced.

An appropriate Order follows.

12

**AND NOW**, this 29th day of May, 2007, after the Court's *in camera* inspection of the

documents over which Defendant claims work-product protection and attorney-client privilege, **IT**

**IS HEREBY ORDERED** that Control Nos. 3, 4, 6, 10, 17, 32, 33, 34, 37, and the four draft letters

contained in Control No. 31, dated June 29, 1998, and June 30, 1998, are protected from discovery

under the attorney-client privilege.

**IT IS FURTHER ORDERED** that the following excerpts from Control No. 31 are

protected from discovery under the principles of the attorney work-product doctrine:

> 1) The page containing the headings "Confidential Relationship Theory" and "Strategies for Defense";
> 2) the two pages under the heading "Response to Complaint";
> 3) the June 22, 1998 Personal Data Sheet;
> 4) the page headed "Gale Paulson TC 7/2/98";
> 5) the page headed "Quotes 6/20/98";
> 6) the page headed "Gale Paulson 6/24/98";
> 7) the page headed "McTighe Industries, Inc. Ch. 11 6/22/98" and the following page; and
> 8) the page dated 6/17/98.

**IT IS FURTHER ORDERED** that on or before **June 5, 2007**, Defendant shall produce

Control Nos. 11, 12, 15, 16, 35, and the portions of Control No. 31 not described above.

Accordingly, Plaintiff's Motion to Compel Compliance with this Court's June 1, 2006, Order

(Document No. 43) is **GRANTED** in part and **DENIED** in part.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

**Cc:    All counsel of record**

13