**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

HIGHLAND TANK & MFG. CO.,          )
                                   )
                                   )
                    Plaintiff,     )          CIVIL ACTION NO. 3:04-100
                                   )
v.                                 )
                                   )          JUDGE KIM R. GIBSON
PS INTERNATIONAL, INC.             )
                                   )
                    Defendants.    )

**MEMORANDUM OPINION AND ORDER**

**Gibson, J.,**

Polonius is not often consulted by corporations, employees, or intellectual property theorists. Nonetheless, in a remark to his son, oft-quoted in other contexts, Polonius aptly if simply summarized both a prescription for prudent action and some of the policy aims of modern intellectual property law: "Neither a borrower nor a lender be; for loan oft loses both itself and friend, And borrowing dulls the edge of husbandry. This above all: to thine own self be true, And it must follow, as the night to day, thou canst not then be false to any man." William Shakespeare, *Hamlet* act 1, sc. 3. While simple, this advice resonates in the modern workplace and courtroom. Employees would do well not to borrow the protected work of their companies when leaving employment. Companies would do well to refrain from over-lending their valuable information to those less inclined to care about its protection. While lengthier and less literate that the above passage, the country's intellectual property and business competition laws share similar ground: both seek to define moral behavior and promote self-respect and respect for the work of others. In addition, our laws aim to preserve incentives to innovate, share information, and invest in

employees.

Unfortunately, a modern Polonius might find himself presenting more nuanced advice in addenda to the above pithy turn of phrase. His simple instruction to refrain from borrowing might be modernized to a longer disclosure that over-"borrowing" of certain materials or innovations may lead to legal liability. And his instruction to refrain from lending might evolve into a multi-clause document identifying the legal and strategic circumference of two opposing spheres, the wise and the unwise "lending" to employees, customers, and competitors,

While simple pithy axioms are fun, the matter before us is unfortunately complicated. It involves four disparate areas of intellectual property law: trade secrets, patent, copyright and trademarks. Moreover, it involves the factually difficult area of employee-employer relations upon hostile parting, and competitors' efforts to vigorously compete in defined marketplaces. In short, Plaintiff Highland Tank & Mfg. Co. ("Highland Tank") asserts four causes of action against Defendant PS International ("PSI"). Both entities compete in selling water-oil separators. Highland Tank now accuses PSI of unfair competition, patent infringement, copyright infringement and trade secret theft. PSI counterclaims for a declaratory judgment that Highland Tank's patent is invalid.

Presently pending before the Court are three summary judgment motions: cross-motions for summary judgment as to Plaintiff Highland Tank's trade secret, trademark, and copyright claims (Doc Nos. 80 and 81); and PSI's Motion for Summary Judgment of Non-Infringement of United States Patent No. 4,722,800 (the '800 Patent) (Doc. No. 79).

Upon review of this matter, the Court finds that Counts Two through Four are not appropriate for summary adjudication because numerous important factual issues remain disputed and uncertain; therefore, those two summary judgment motions (Doc. Nos. 80 and 81) will be **DENIED.**

2

As to PSI's Motion for Summary Judgment of Non-Infringement (Doc. No. 79), the Court retains this matter under consideration, and will in due time construe the relevant terms of the '800 Patent, with the assistance of the parties' briefs and evidentiary exhibits, and issue a ruling on PSI's motion. Following the upcoming issuance of an Order construing the necessary claims and adjudicating PSI's summary judgment motion, the Court will subsequently schedule a conference at which all scheduling matters related to the remaining claims will be decided.

## I. JURISDICTION AND VENUE

Jurisdiction is proper in the United States District Court for the Western District of Pennsylvania under 28 U.S.C. §§ 1331 and 1338, as the dispute arises directly out of matters governed by the laws of the United States, including patent, trademark and copyright laws. Jurisdiction over the state law trade secret claim is proper pursuant to 28 U.S.C. § 1367. While venue issues may have existed at the outset of this matter, the Rule 12 motion period and the responsive pleading time have passed, and thus PSI waived any venue objections.

## II. INTRODUCTION AND BACKGROUND

On May 7, 2004, Highland Tank filed a Complaint alleging infringement of United States the '800 Patent. Doc. No. 1. On December 23, 2004, with leave of this Court, Highland Tank filed an Amended Complaint. Doc. No. 13. The Amended Complaint added additional claims: Count Two–Trade Secret Misappropriation; Count Three–Violation of the Lanham Act; and Count Four–Copyright Infringement.

### A. Background Discussion of Court's Ruling on Motion to Dismiss

In early 2005, PS International filed a Motion to Dismiss Counts Two, Three and Four of the Amended Complaint. Doc. No. 19. The Court denied this Motion in full, refusing to dismiss any

of the Counts. Doc. No. 31.

As to Count Two, the Court found only immaterial conflicts between South Dakota and Pennsylvania trade secret law, and hence declined to choose which law to apply. PSI argued that any putative trade secrets were disclosed in a patent application. In response, Highland Tank stated that the allegedly misappropriated information was different from that disclosed in the patent. Because it was required to construe facts in favor of Highland Tank on a motion to dismiss, the Court found that it must accept the possibility of Highland Tank's position, and consequently could not dismiss Count Two on those grounds.

PSI also argued that the allegedly protected information was widely circulated; however, the Court found that Highland Tank had alleged facts that, if proven, could support a finding that it made reasonable efforts to protect its secrets. The Court also found that for purposes of a motion to dismiss, PSI's statute of limitations and laches arguments were not persuasive.

In its motion to dismiss briefing, PSI further argued that 1998 proceedings in a South Dakota Bankruptcy Court barred Counts Two, Three and Four. This Court found that the instant claims were distinguishable in terms of content from any claims settled in earlier proceedings.

As to Count Three, PSI asserted that the Amended Complaint failed to allege essential elements of a claim under Section 43(a) of the Lanham Act. PSI also argued that Count Three was barred by the statute of limitations and the doctrine of laches. However, the Court found that Highland Tank's allegations properly stated a claim that could potentially afford relief. Furthermore, the Court found that the statute of limitations and doctrine of laches did not preclude Highland Tank's trademark cause of action.

As to Count Four, PSI argued that Highland Tank is not entitled to copyright protection

4

because of the merger doctrine, wherein ideas and expressions merge. PSI also argued that the copyright claim was barred by the statute of limitations and laches. Applying the motion to dismiss standard, this Court found such arguments unpersuasive.

Finally, PSI argued that Highland Tank could not recover on its claims because its own hands were unclean. Specifically, PSI offered depositions showing that Highland Tank possessed its competitors' manuals; however, this Court could not consider those depositions while adjudicating a motion to dismiss.

### B. Background Discussion of Amended Answer

On September 19, 2005, PSI filed an Amended Answer (Doc. No. 32), denying all of Highland Tank's claims. Furthermore, PSI asserted numerous affirmative defenses.[1] As a counterclaim, the Amended Answer requested declaratory judgment of non-infringement and invalidity regarding the '800 Patent. As relief, the Amended Answer sought dismissal of the claims against PSI, costs, declaration of non-infringement and invalidity of the'800 Patent, an injunction on all suits regarding the '800 Patent, and an injunction to prevent Highland Tank from publicizing the lawsuit or threatening PSI's customers with lawsuits on the '800 Patent.

## III. FACTUAL SETTING

This Section presents the general framework of the story behind the litigation, setting out the few undisputed facts, while also identifying the numerous areas of dispute.[2] Nearly every fact

---

[1] Highland Tank's failure to state a claim, invalidity of claims of '800 Patent; non-infringement; Highland Tank is barred by prosecution history estoppel from applying DOE; patent misuse; failure to comply with marking provision of Section 287; statute of limitations; no trade secret protection because information was revealed in '800 patent, or the information was in the public domain; laches; res judicata/collateral estoppel; merger; unclean hands.

[2] The Court finds it unnecessary and improper, given the specific circumstances of this case and the content of the parties' current summary adjudication presentations, to resolve any of the parties' numerous factual disputes. Furthermore, inclusion of facts in this section does not necessarily connote precise relevance to the claims and defenses at issue in this

surrounding this litigation is aggressively disputed by the parties. *See* Doc. Nos. 83, 89, 92, 95. The vehemence of these factual disagreements raises the question of why both parties deemed it appropriate to request summary resolution. Indeed, the parties' statements of material facts do not even attempt to cloak naked argument in the required objective, undisputed facts. Vital factual disputes on issues of material import demonstrate that this case should proceed to trial.

### A. Statement of Facts Applicable to Cross-Motions for Summary Judgment on Counts Two Through Four

The parties and other various involved entities all sell oil-water separators ("separators"). For many years, Mssrs. Brett Sadler and Gale Paulson worked at McTighe Industries, Inc. (hereinafter "McTighe Inc."), which designed and manufactured separators. Doc. Nos. 89 and 95, ¶ 1. Mssrs. Sadler and Paulson, both engineers, were responsible for sales, installation, and customer support related to McTighe's separators. Following a bankruptcy proceeding, the assets of McTighe Inc. were apparently eventually purchased by McTighe Manufacturing, LLC, which is an entity related to Highland Tank.[3] Doc. Nos. 83 and 92, ¶¶ 1, 7; Doc. Nos. 89 and 95, ¶ 1.

Tuesday, June 30, 1998, was a busy day for Mssrs. Sadler and Paulson: they resigned from McTighe Inc. while also executing the Articles of Incorporation for PSI. Doc. Nos. 83 and 92, ¶¶ 7-8.

Since its inception, PSI has conducted business by selling oil-water separators; it currently employs four individuals. Doc. Nos. 83 and 92, ¶ 1. PSI does not manufacture or install the oil-water

---

action.

[3]During its Chapter 11 liquidation, the precise timeline of which is unclear, assets of McTighe Inc. were sold to Billion International Group. Doc. Nos. 83 and 92, ¶ 11. In 2003, Billion International Group sold these assets to McTighe Industries, LLC, which apparently is an entity related to Highland Tank. Doc. Nos. 89 and 95, ¶¶ 1, 1.ff. Highland Tank asserts that McTighe Manufacturing, LLC was created for the purpose of receiving McTighe Inc.'s assets from Billion International Group. Doc. Nos. 89 and 95, ¶ 1. The parties dispute the facts and import of the details of these transactions. *See* Doc. Nos. 89 and 95, ¶ 1.q-v.

6

separators itself, as it hires outside companies to perform those tasks as needed. Doc. Nos. 83 and 92, ¶ 3. Consequently, PSI does not maintain an inventory or warehouse. Doc. Nos. 83 and 92, ¶ 4; Doc. Nos. 89 and 95, ¶ 1.aa. The parties disagree as to PSI's sales figures. Doc. Nos. 83 and 92, ¶ 2.

The parties also disagree as to the events surrounding Mssrs. Paulson's and Sadler's resignation from McTighe Inc. and simultaneous creation of a competing business.[4] PSI argues that the departure occurred primarily because of McTighe Inc.'s pending bankruptcy. Highland Tank argues that Mssrs. Paulson and Sadler carefully planned their exit, while unlawfully "poaching" customers, holding back bids, stealing confidential information, and fomenting customer confusion regarding McTighe's legal status, and distinctions between the two companies.

Apparently, McTighe Inc. immediately suspected Mssrs. Sadler and Paulson of various bad acts, including pocketing bids[5] for their own later use. Doc. Nos. 83 and 92, ¶¶ 53. On July 6, 1998, McTighe Inc. sued Mssrs. Sadler and Paulson, seeking a judicial declaration enjoining the two men from taking McTighe Inc. trade secrets. Doc. Nos. 83 and 92, ¶ 9; Doc. Nos. 89 and 95, ¶ 1.n. While the precise reason is unclear, this action was apparently voluntarily dismissed by McTighe Inc. during or following a hearing on July 9, 1998. Doc. Nos. 83 and 92, ¶ 10. During this hearing, Mssrs. Sadler and Paulson apparently informed that court that they did not possess any McTighe Inc. property. *Id.*

---

[4]The parties also disagree as to the reasons for PSI's successful start. PSI asserts that Mssrs. Sadler and Paulson utilized individually gained knowledge, training, and experience, while Highland Tank asserts that PSI's success was due solely to its founders' possession of confidential engineering designs, customer lists, and manufacturer information. Doc. Nos. 83 and 92, ¶ 5.

[5]Prior to its dissolution, McTighe Inc. usually processed approximately 50 bids per month. Doc. Nos. 83 and 92, ¶ 52. In May, 1998, it processed 47 bids. *Id.* However, in June, 1998, it processed only 19 bids. *Id.*

7

Despite the dismissal of that 1998 action, Highland Tank now asserts a claim of theft of trade secrets, arguing that additional thefts occurred subsequent to the dismissal of the 1998 action. After that dismissal, Mssrs. Sadler and Paulson allegedly unlawfully obtained engineering drawings and other McTighe materials. Doc. Nos. 83 and 92, ¶ 11. PSI responds that these actions were simply obtaining materials from the "public domain" without subterfuge or illegality. Doc. No. 92; Doc. Nos. 89 and 95, ¶ 1.x. PSI further describes these types of actions as common practices within the industry. *Id.*; Doc. Nos. 89 and 95, ¶ 1.w, 5. Highland Tank disagrees, labeling PSI's actions as illegal, and an immoral departure from the spirit of Mssrs. Sadler's and Paulson's representations to the court in the dismissed 1998 action. Doc. No. 83, ¶ 13.

Highland Tank also asserts that after the creation of PSI, Mssrs. Sadler and Paulson intentionally fomented customer confusion as to distinctions between PSI and McTighe, Inc. Doc. Nos. 83 and 92, ¶¶ 55-56. PSI disagrees, asserting, *inter alia*, that McTighe Inc.'s customers were not secret. Doc. Nos. 83 and 92, ¶¶ 55-56. Following his resignation, Mr. Paulson kept the same phone number, and continued to receive business calls at that phone number. Doc. Nos. 83 and 92, ¶¶ 57. Highland Tank asserts that through this and other actions, Mr. Paulson either created or took advantage of customer confusion between PSI and McTighe. Doc. Nos. 83 and 92, ¶¶ 59-64. PSI asserts that McTighe Inc. did not ask Mr. Paulson to change his phone number. *Id.* The parties disagree as to the facts surrounding this alleged confusion and its causes.

The parties further diverge in their characterizations of the information allegedly obtained by PSI. *See* Doc. Nos. 83 and 92, ¶¶ 17-20. Highland Tank asserts that Mssrs. Sadler and Paulson unlawfully obtained critical and confidential information, including customer lists. Doc. No. 83, ¶¶ 21-23. PSI counters first that such customer lists did not exist, or that the lists were not in the

8

possession of Mssrs. Sadler and Paulson. Doc. No. 92, ¶¶ 21-23.

The parties disagree as to the facts surrounding these customer lists and other putatively confidential McTighe Inc. information, including lists of manufacturers and engineering drawings and catalogs. For instance, while Highland Tank asserts that McTighe Inc. safeguarded the identity of its customers and manufacturers, PSI counters that McTighe Inc. did not employ any policy to protect the identity of customers or manufacturers. Doc. Nos. 83 and 92, ¶ 24. The parties further disagree about standards of confidentiality within the industry. Doc. Nos. 83 and 92, ¶¶ 25. For instance, PSI asserts that manufacturers within this particular industry are easily identifiable, because it is a small market. Doc. No. 92, ¶ 26. The parties further disagree about the nature and relevance of PSI's alleged use of manufacturers previously used by McTighe. Doc. Nos. 83 and 92, ¶¶ 27-28. PSI states that it used well-known manufacturers who were not specialized and were not subject to any restrictions. *Id.*

The parties further disagree regarding the type, nature, extent and importance of the documents allegedly taken from McTighe. *See* Doc. Nos. 83 and 92, ¶ 29. Also, the parties disagree as to the extent that PSI copied McTighe's engineering drawings, for which Highland Tank asserts that it owns U.S. Copyright Registration No. TXu 1-246-602. *See* Doc. Nos. 83 and 92, ¶ 45. Highland Tank argues that a comparison of the drawings and layout demonstrates blatant copying, while PSI retorts that it did not copy anything, and that all oil-water separators look the same anyway. Doc. Nos. 83 and 92, ¶¶ 30-31; 44-48 .

The parties further disagree regarding the facts surrounding McTighe's efforts to keep its information confidential. *See, e.g.*, Doc. Nos. 89 and 95, ¶ 1.c-g. Highland Tank characterizes McTighe's disclosure of the information as limited to select individuals, such as sales engineers or

9

customer-engineers, for use in installation. Doc. No. 83, ¶¶ 32-33. However, PSI asserts that McTighe offered the information to literally anyone who requested it. Doc. No. 92, ¶¶ 32-33; 46. The parties also disagree as to the nature of a postcard program, which Highland Tank characterizes as a method of ensuring confidentiality, while PSI classifies it as a simple sales follow-up tool. Doc. Nos. 83 and 92, ¶ 35. Furthermore, the parties disagree as to nature and significance of warnings placed within McTighe engineering manuals and catalogs. Doc. Nos. 83 and 92, ¶¶ 35-36; 39-45.

Highland Tank has submitted various damages analyses related to its claims, each of which is disputed by PSI. Doc. Nos. 83 and 92, ¶¶ 37, 49, 65.

## IV. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a disputed genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2509-10, 91 L. Ed. 2d 202, 211-12 (1986). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 249, 106 S. Ct. at 2511, 91 L. Ed. 2d at 212. The court is to draw all reasonable inferences in favor of the nonmoving party. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007) ("In considering the evidence, the court should draw all reasonable inferences against the moving

10

party."). In *El*, the United States Court of Appeals for the Third Circuit explained:

> [I]f there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted. Specious objections will not, of course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will.

*Id.*

## V. ANALYSIS OF PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT ON COUNTS TWO, THREE, AND FOUR

### A. Introduction

The sole issue before the Court as to the parties' respective requests for summary judgment on Highland Tank's trade secret, Lanham Act and copyright infringement claims is whether the evidence shows that absence of a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. This Court's role at this stage in the proceeding is not to resolve any disputed issues of fact, but to determine whether any factual issues exist that require determination at trial. However, the party opposing summary judgment must raise sufficient disagreement to require submission of the evidence to the jury. Because the Court finds that multiple issues of material fact remain disputed, the Court will deny both motions for summary judgment.

### B. Highland Tank's Trade Secret Claim is Not Appropriate for Summary Adjudication

#### 1. Choice of Law Analysis: This Court will Apply South Dakota Law to the Trade Secret Claim

In this Court's motion to dismiss opinion, the Court did not find any relevant distinction between South Dakota and Pennsylvania law regarding trade secrets. Thus, the Court deferred on making a choice of law ruling. However, with a more detailed record now before the Court, the issue is now ripe for determination.

11

Consequently, this Court now reconsiders the choice of law question. This Court must apply the *Erie* doctrine to state law claims over which it exercises supplemental jurisdiction. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218, 228 (1966). As this Court sits within the Commonwealth of Pennsylvania, the Court must apply Pennsylvania's choice of law rules to decide whether to apply the law of South Dakota or Pennsylvania. *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Pennsylvania employs a two-part inquiry in assessing choice of law issues: first, the Court evaluates whether an actual conflict exists between the laws of the two jurisdictions; then, if a true conflict exists, the Court assesses which jurisdiction has the greater interest in having its laws applied. *See Lejeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1997).

### a. Sufficient Distinctions Exist in the Relevant Laws of South Dakota and Pennsylvania

Under South Dakota law, a trade secret is "information, including a formula, pattern, compilation, program, device, method, technique or process, that . . . [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and . . . [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." S.D. Codified Laws § 37-29-1(4) (2005). Under South Dakota law, whether information can legally be considered to be a "formula, pattern, compilation, program, device, method, technique or process" is a question of law for the Court. *Paint Brush Corp. v. Neu*, 599 N.W. 2d 384, 389 (S.D. 1999). However, the question of reasonable efforts regarding maintaining secrecy is primarily a factual inquiry. Importantly, "An action for misappropriation must be brought within three years after the

12

misappropriation is discovered or by exercise of reasonable diligence should have been discovered."

S.D. Codified Laws § 37-29-6 (2005).

Pennsylvania currently applies a version of the Uniform Trade Secrets Act that is nearly identical to South Dakota's. 12 Pa. C.S.A. § 5301 *et seq.* (Purdon's 2005). However, this statutory scheme was not adopted until April 19, 2004, and does not apply to misappropriation occurring prior to that date. Defendant asserts that Plaintiff had knowledge of the alleged misappropriation in 1999. Meanwhile, Plaintiff asserts that while the misappropriation occurred in 1998, it did not discover this misappropriation until 2004. Regardless, Pennsylvania's statutory scheme would not apply to this case, and the Court will instead consider Pennsylvania common law trade secret law for purposes of its choice of law analysis.

Pennsylvania's 2005 adoption of the UTSA does not apply because it did not take effect until after the alleged misappropriation. Under Pennsylvania common law, a trade secret is "any formula, pattern, device, or compilation of information which is used in one's business, and gives him an opportunity to obtain an advantage over competitors who do not know how to use it." *Felmlee v. Lockett*, 351 A.2d 273, 277 (Pa. 1976). Thus, to obtain judgment in its favor, a party alleging theft of trade secrets must prove that there was a trade secret, which was of value to its business, and which it had the right to use and enjoy by virtue of discovery or ownership, and the secret was communicated to the accused employees in a position of trust and confidence, in such circumstances to make it inequitable and unjust to disclose it to others or make use of it themselves. *Felmlee*, 351 A.2d at 277. The information need not be kept entirely secret to retain its status as a trade secret; however, any circulation of the information must be performed with at least an implied restriction upon its use. *See Pressed Steel Car Co. v. Std. Steel Car. Co.*, 60 A. 4, 9-10 (Pa. 1904).

13

Furthermore, the party alleging theft must have taken reasonable precautions to ensure secrecy. *Phila Extracting Co. v. Keystone Extracting Co.*, 176 F. 830, 831 (E.D. Pa. 1910).

In its previous decision, the Court found that a true conflict did not exist. However, at this stage, it is obvious that the several aspects of the trade secret claim determination will be in hot dispute. Consequently, it is inevitable that even minor differences in the laws of the two jurisdictions could have material import. Consequently, this Court will proceed to the second step of the inquiry.

### b. South Dakota Has a Greater Interest in Having Its Laws Applied

PSI is located in South Dakota. The trade secret theft alleged in this matter would have occurred in South Dakota. South Dakota carries an inherent interest in seeing that its resident companies are protected from unlawful behavior. The only apparent connection of Pennsylvania to most of the actions underlying this lawsuit is that it is the current home of Plaintiff, and the venue for this litigation. Consequently, as to the trade secret claim, this Court will apply the laws of South Dakota.

### 2. Rationales for Denying Summary Adjudication of the Trade Secret Claim

Under South Dakota law, the existence of a trade secret is a mixed question of law and fact. *Weins v. Sporleder*, 569 N.W.2d 16, 20 (S.D. 1997). Given the presence of factual questions, to grant summary judgment for Highland Tank, the Court would need to find that the competent evidence shows that Highland Tank has proven all of the required elements to such a degree of certainty that no reasonable jury could find otherwise. Similarly, to grant summary judgment for PSI, the Court would need to find that no reasonable jury could construe the competent evidence in a manner that would entitle Highland Tank to its requested relief.

14

Upon analysis, neither party meets its burden. The admissible evidence presented to the court is currently sparse and hotly disputed; in no way does such evidence form a basis for summary judgment for either party.

Several factual matters remain at issue and should be reserved for determination at trial. First, to determine whether the information in question could constitute a trade secret, which is a matter of law, disputed matters of fact will need to be resolved. Secrecy is essential to the existence of trade secrets, and a putative holder of trade secrets must exercise reasonable precautions. *Weins*, 569 N.W.2d at 22-23. Numerous factual considerations must be developed and considered, including the following: security of the at-issue documents, existence of confidentiality agreements and perspectives of those having access to the documents, including the holder's efforts to communicate the significance of confidentiality. *Id.* For instance, the parties disagree sharply as to the facts of what information constituted the putative secrets. Furthermore, while Highland Tank presents what it claims is undisputed evidence of Sadler's and Paulson's bad acts, the parties indisputably disagree as to whether the at-issue information was actually secret. The facts are unclear regarding the scope of the dispersal of this information, and the nature and quality of the efforts of Highland Tank and its predecessors to keep the information secret. In other words, this Court will need to assess, based upon evidence presented at trial, all of the affirmative measures taken by Highland Tank and its predecessors; such measures discussed, but not clarified, include the extent of these documents' availability in the public domain, any policies of marking materials with confidentiality warnings, any efforts made to warn and/or track those who were given access, and attempts to prevent Paulson and Sadler themselves from obtaining and improperly disclosing confidential materials. In this matter, questions surround the nature of those efforts, including the

15

availability of trade manuals, the presence of confidentiality warnings, and other similar efforts.

Second, open factual questions exist that will determine the result of a threshold issue in this matter: whether the South Dakota statute of limitations bars Highland Tank's trade secret claim. PSI argues that Highland Tank or its predecessors knew or should have known of the alleged trade secret misappropriation in 1998. Under South Dakota law, a trade secret claim must be brought within three years after the misappropriation is discovered or should have been discovered. SDCL § 37-29-6. PSI argues that in 1998, Highland Tank acquired knowledge of the alleged theft; meanwhile, Highland Tank asserts that it did not uncover knowledge of the 1998 theft until 2004. Highland Tank's position is plausible and defensible: it believed Sadler's, Paulson's, and Attorney Donahue's representations. However, PSI's arguments are also plausible. In short, both sides assert putative evidence in favor of their respective positions. Because weighing the respective evidence is inappropriate at this summary disposition stage, this issue presents yet another rationale for denying both parties' requests for summary judgment. Trial allows both sides the contemporaneous opportunity to present competing evidence and argument; this system filters truth to stage front, while also allowing the jury system to work its democratic injection of society's morals and common sense.

A third exemplary issue of disputed fact is the question of whether the information's "secret" status was lost because of a filed patent application. "[T]he very nature of the patent publication [has] been consistently held to work a destruction of any trade secret disclosed therein." *Felmlee v. Lockett*, 351 A.2d 273, 278 (Pa. 1976). PSI asks this Court to find, as a matter of law, that the disclosures in the McCarthy Patent "work a destruction" on the trade secret status of the disputed information. However, factual disputes exist as to what information is at issue, and as to whether

16

this information exceeds the scope of the disclosures of the McCarthy Patent. These factual disputes should not be resolved by summary adjudication, but are proper matters for determination at trial.

A final instantiation of the inappropriateness of summary adjudication occurs in PSI's failure to submit competent evidence supporting its claim regarding the absence of confidentiality marking in the 1986 version of McTighe's Technical Engineering Manual. This Court is obviously restricted to considering admissible evidence that is presented to it; where PSI relies upon an argument in its motion for summary judgment, but does not present the associated evidence, summary judgment is not appropriate.

Thus, because there are disputed issues of material fact, regarding which a reasonable jury could come to varying conclusions, and also because neither party is entitled to judgment as a matter of law based upon the small amount of undisputed evidence, neither party is entitled to summary judgment. In short, determinative issues regarding this claim, such as the degree of circulation of the information and the reasonableness of Highland Tank's efforts to keep the materials secret, are matters that are properly adjudicated in a trial.

### C. Count Three, Alleging a Violation of Lanham Act § 1125(a), is not Appropriate for Summary Adjudication

Given the existence of disputed questions of material fact, summary judgment is also not appropriate for Highland Tank's Lanham Act claims. The Court finds that the competent evidence presented to date does not show that Highland Tank is entitled to judgment as a matter of law on this claim. Also, the Court finds that any undisputed evidence is insufficient to entitle PSI to judgment as a matter of law.

Section 1125(a) of the Lanham Act prohibits, *inter alia*, false or misleading descriptions that

17

are likely to cause confusion or mistake as to the affiliation of a product or service. *See* 15 U.S.C. § 1125(a). To prove its claim, Highland Tank must show that it owns a valid and legally protectable mark, and that defendant's use of the mark to identify goods or services caused a likelihood of confusion. *See Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency*, 214 F.3d 432, 437 (3d Cir. 2000). Highland Tank alleges that Sadler and Paulson intentionally used McTighe engineering designs, and intentionally misrepresented facts to confuse customers as to the actual source of the their separators. While Highland Tank presents substantial competent evidence regarding its Lanham Act claims, PSI introduces sufficient contradicting evidence and argument to raise a disputed issue of material fact, and thus avoid summary judgment.

As with the trade secret misappropriation claim, material issues of disputed fact envelop even the threshold inquiry into the statute of limitations. It is highly uncertain when or how Highland Tank or its predecessors should have known facts sufficient to put it on notice of PSI's alleged infringing acts. PSI suggests November 1998. Highland Tank suggests 2004. The evidence is unclear, and hence, neither party is entitled to summary judgment.

Furthermore, PSI raises the defense of laches to Highland Tank's trademark claims. Laches is an equitable defense applicable when a rights-holder's substantial and inexcusable delay in bringing an action causes prejudice to the defendant. A successful laches defense operates to bar all claims, and is premised upon the policy that punishing a mark holder for undue delay will discourage gamesmanship and subterfuge while allowing some measure of peace to business actors. Here, the facts and circumstances regarding the discovery of the facts underlying the claim need additional development. In short, the laches defense, and Highland Tank's replies to it, will turn upon resolution of disputed issues of fact; thus, another reason exists for denying both parties' request for

18

summary adjudication of the trademark claim.

**D. Highland Tank's Copyright Infringement Claim (Count IV) is Not Appropriate for Summary Adjudication**

Given the existence of disputed questions of material fact, summary judgment is also not appropriate for Highland Tank's Copyright Infringement claims. The Court does not believe that Highland Tank has, at this stage, presented sufficient evidence to warrant summary adjudication. Furthermore, PSI has not presented sufficient undisputed evidence that would entitle it to summary judgment. Moreover, disputed issues of material fact exist, and the Court hereby denies both parties' motions for summary judgment on this claim.

Highland Tank alleges that PSI made unauthorized copies of engineering drawings and technical manuals, or that it prepared derivative works, in violation of 17 U.S.C. §§ 106(1), (2) and (3). A copyright infringement plaintiff must prove ownership of a copyright, that the defendant copied elements of the protected work, and that the defendant's copying constitutes an improper appropriation. *See Ford Motor Co. v. Summit Motor Prods, Inc.*, 930 F.2d 277, 290 (3d Cir. 1991). Proof of infringement frequently involves fact-based showing of access and substantial similarity.

As with the trade secret misappropriation and Lanham Act claims, material issues of disputed fact envelop even the threshold inquiry into the statute of limitations. Specifically, it remains disputed as to when or how Highland Tank or its predecessors should have known facts sufficient to put it on notice of PSI's alleged infringing acts. PSI argues for one date, and Highland Tank argues for a different date; consequently, the question shall proceed to trial. Furthermore, the extent to which expression and fact merge in this particular context deserves further inspection. PSI's attack upon the protectability of the material is sufficient to survive Highland Tank's motion for

summary judgment, while Highland Tank's own presentation of the elements is sufficient opposition to PSI's motion.

### E. Further Discussion of the Parties' Summary Judgment Arguments

In addition to those matters discussed above, the parties raised additional arguments in their briefs. Where appropriate, the Court will now address these arguments.

#### 1. Counts Two through Four Are Not Precluded

PSI argues at length that the three non-patent claims at issue in this litigation are subject to claim preclusion. As this Court has previously held, PSI is mistaken. PSI creatively but futilely argues that Highland Tank's predecessors did or should have moved for an injunction on the future actions alleged to form the factual basis for this action, and that pursuit or obligation to pursue such relief somehow bars this action. This Court disagrees. The claims in this matter are distinguishable from those asserted in the 1998 action, as they emerge from behaviors alleged to have occurred after the closure of that action. PSI's attempt to illogically broaden the circumference of "nucleus of facts" would serve to destroy the policy aims of preclusion doctrines, and invite pragmatic parties to misbehave following certain final judgments.

#### 2. The Court Does not Accept, at the Summary Judgment Stage, PSI's Arguments that the Unclean Hands Doctrine and other Policy-Rooted Doctrines Preclude Highland Tank from Bringing Counts Two through Four

PSI argues that Highland Tank itself engaged in the "exact same actions" as those alleged by Highland Tank. The doctrine of unclean hands, a judicially created equitable doctrine, demands that a party seeking justice for certain types of wrongs must come to the matter with clean hands. *See Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001). PSI presents some deposition evidence that would suggest that Highland Tank or its predecessors were engaged in the

20

same type of behavior that constitute the grounds for Counts Two through Four. Additionally, PSI counters that Highland Tank carried improper motives, emerging solely out of offensive business competition goals, in bringing this action. Highland Tank counters that while Sadler not only admitted that he possessed his competitor's information, he also admitted to using that information. In other words, Highland Tank argues that while its own actions may not have been perfect, Sadler's and Paulson's actions were substantially worse. Furthermore, Highland Tank presents competent evidence, a party admission, relating to Sadler's and Paulson' post-suit conduct in relation to the at-issue materials. Highland Tank's assertion is sufficient to avoid summary judgment premised upon an unclean hands defense. During a trial, PSI may have opportunity to present such evidence, to the extent that it is relevant to an at-issue claim or defense. However, the evidence currently before the Court is of uncertain reliability given the limited role of the court in considering this matter for summary judgment; such evidence, where appropriate, should be presented and considered during the trial process.

### 3. Entity Confusion Does not Require Dismissal

PSI presents numerous details about entity confusion related to McTighe Manufacturing, LLC and Highland Tank. Indeed, it is important that parties pay careful heed to the country's system of laws that govern business entities. Matters of form are important; however, form is not an infinite trump over the substance of a situation. In this matter, a chose in action against Sadler and Paulson was apparently eventually sold to the entity known as McTighe Manufacturing, LLC. This entity is wholly owned by Highland Tank. It seems as if it would have been prudent for Highland Tank to add McTighe Manufacturing, LLC as an additional Plaintiff. However, this Court is not convinced that the entity history described in the briefs defines McTighe Manufacturing, LLC as the

21

only proper party.  Moreover, precedent indicates that a true party in interest may affirm an action

brought by a related entity; hence, a formal amendment of the Amended Complaint, to add McTighe

Manufacturing, LLC, is unnecessary. *See Pace v. Gen. Elec. Co.*, 55 F.R.D. 215, 219 (W.D. Pa.

1972)("Formal joinder or substitution of the real party in interest will not be necessary when he

ratifies the commencement of the action.").

## VII.  Conclusion

In conclusion, as described above, the Court finds that the existence of numerous disputed

material issues of fact, along with the impropriety of granting judgment as a matter of law to any

party on any claim, preclude any entry of summary judgment as to Claims Two, Three and Four.

As mentioned above, following issuance of the Court's ruling upon Defendant's Motion for

Summary Judgment of Non-Infringement (Doc. No. 179), the Court will set a schedule for a

conference to determine the subsequent case schedule as to all remaining claims.  As an important

note, the Court reminds the parties that its above commentary on the issues present in this matter was

constructed for the essential purpose of assessing whether summary judgment was appropriate.

Summary judgment is an extraordinary remedy, and is appropriate only when no material disputed

facts exist, and the moving party is entitled to judgment as a matter of law.  This relatively stringent

standard has not been met as to either of the adjudicated motions.

An appropriate order follows.

## ORDER

**AND NOW**, this 30th day of March, 2010, this matter coming before the Court on the Parties' Cross-Motions for Summary Judgment (Doc. Nos. 80 and 81), upon consideration of all relevant briefings, and for all of the foregoing reasons, **IT IS HEREBY ORDERED** that the two aforesaid motions are **DENIED.**

**BY THE COURT:**

_____

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**