IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HIGHLAND TANK & MFG. CO., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 3:04-100 |
| | ) | |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| PS INTERNATIONAL, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

**Gibson, J.,**

Presently pending before the Court is Defendant PSI's Motion for Summary Judgment of Non-Infringement (Doc. No. 79). With the assistance of the parties' briefs and evidentiary exhibits, this Opinion construes the essential disputed terms of the '800 Patent, and rules on PSI's request for summary adjudication.

Upon complete analysis, the Court finds that as a matter of law, Defendant PSI's two models of water-oil separators that are accused in this action do not infringe **any** of the claims of the '800 Patent, either literally or under the doctrine of equivalents. Accordingly, Defendant's motion for summary judgment (Doc. No. 79) is granted for the reasons stated in the below opinion.

## I. JURISDICTION AND VENUE

Jurisdiction is proper in the United States District Court for the Western District of Pennsylvania under 28 U.S.C. §§ 1331 and 1338, as the disputes within this case arise directly out of matters governed by the laws of the United States, including patent, trademark and

copyright laws.

## II. INTRODUCTION AND BACKGROUND

On May 7, 2004, Highland Tank filed a Complaint alleging infringement of the '800 Patent. Doc. No. 1. On December 23, 2004, with leave of this Court, Highland Tank filed an Amended Complaint. Doc. No. 13. The Amended Complaint added additional claims: Count Two–Trade Secret Misappropriation; Count Three–Violation of the Lanham Act; and Count Four–Copyright Infringement.

## III. FACTUAL SETTING

Most relevant facts of this matter were set forth in the court's previous summary judgment order. Thus, this Section presents only those matters that are peculiarly pertinent to adjudication of this summary judgment motion.

Plaintiff's 4,722,800 Patent (the '800 Patent) claims an Oil-Water Separator device. U.S. Patent No. 4,722,800, at [54] (filed May 30, 1986). The innovation claimed in the '800 Patent involves a device that separates oil from water while the oil-water mixture moves through the separator. An inlet nozzle directs the oil-mixture downwardly onto a flat wear place, which then directs the flow downward toward the inlet wall of the tank. '800 Patent, 7:64-8:6. The fluid then contacts the end wall, reflecting toward the bottom of the tank.'800 Patent, 8:6-10. Subsequently, the fluid flows upward through the separating zone, and through a vertical stack of parallel coalescer plates by means of a by-pass prevention barrier. '800 Patent, 8:14-16; 8:20-22.

These coalescer plates divide the fluid stream into discrete streams that flow between the plates.'800 Patent, 8:45-48. Oil droplets within each discrete stream flow upwardly along the corrugated surface of the coalescer plates. '800 Patent, 8:45-48.

Plaintiff has alleged infringement of Claims 1, 2, 3, 4, 13, 14, 15, 16, 17, 18, 19, 20, 22 and 23 of the '800 Patent. Of these claims, only Claims 1, 17 and 22 are independent claims.

Plaintiff has alleged that certain of Defendant PSI's separators, the PSR and PSRC models, infringe the '800 Patent.

## IV. STANDARD ON SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). If the movant shows a prima facie case for summary judgment, then the burden of production shifts to the nonmovant to present specific evidence indicating there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202, 215 (1986). "When the moving party does not have the burden of proof on the issue that is the subject of the summary judgment motion . . . the movant nonetheless bears the initial burden of coming forward with sufficient evidence to demonstrate that there is no material issue of fact that would preclude summary judgment, and that it is entitled to judgment as a matter of law." *Vivid Techs., Inc. V. Am. Science & Eng'g, Inc.*, 200 F.3d 795, 806 (Fed. Cir. 1999). A moving party meets its initial burden if it is able to provide evidence showing that no material issue of fact exists, and that the nonmoving party cannot prove an essential element of its case. *Id.* at 807. If this burden is shifted, then the burden of coming forward shifts to the motion opponent. *Id.* "The opposing party does not, at this stage, have the burden of establishing that it is entitled to judgment on undisputed facts or on the opposer's

version of the facts, or that there are material issues of fact which require resolution at trial." *Id.* at 806-07.

A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a disputed genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2509-10, 91 L. Ed. 2d 202, 211-12 (1986). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 249, 106 S. Ct. at 2511, 91 L. Ed. 2d at 212.

Furthermore, "[s]ummary judgment is appropriate in a patent case as in any other." *Barmag Barmer Machinefabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984). Specifically, this Court may grant summary judgment on the issue of infringement or noninfringement. *See, e.g., Flex-Rest LLC v. Steelcase, inc.*, 455 F.3d 1351 (Fed Cir. 2006). A patent infringement claim must be proven by the plaintiff by a preponderance of the evidence. *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001). As will be discussed in more detail below, the Court analyzes infringement via a two-step inquiry: first, the court construes the asserted patent claims as a matter of law. The first step of the analysis, claim construction, is a matter of law. *Markman v. Westview Instruments*, 517 U.S. 370 (1996). Second, the fact finder, which at the summary judgment stage is this Court, must determine whether the accused product contains *each and every* limitation of the properly construed claim, whether literally or under the doctrine of equivalents. *See Ferguson Beauregard v. Mega Sys., Inc.*, 350 F.3d 1327, 1338 (Fed. Cir. 2003); *SmithKline Diagnostics,*

*Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988). Disputes over claim construction do not constitute a question of fact that would preclude summary judgment, absent a showing that there is a conflict in the underlying evidence relevant to the interpretation of the proper claim scope. See *General Mill, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997); *George v. Honda Motor Co.*, 802 F.2d 432, 434 (Fed Cir. 1986). "Summary judgment on the issue of infringement [or noninfringement] is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *Chime v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005).

## V. ANALYSIS OF DEFENDANT PSI'S MOTION FOR SUMMARY JUDGMENT

### A. Infringement

The determination of whether a patent has been infringed requires a two-step analysis. The first step is to construe the claim language to determine the proper scope of the patent. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). This allows the subsequent determination of whether the allegedly infringing product falls within the scope of the patent. *See Datacard Corp. v. Kunz KG*, 778 F. Supp. 544 (D. D.C. 1991). The patentee must prove infringement by a preponderance of the evidence. *Id.* Of extremely relevant note in this action, each and every limitation of a claim must be present in the accused devices, either literally or by substantial equivalent, for infringement to have occurred. *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1313 (Fed. Cir. 2003). In other words, a patent's claim is infringed where each properly construed claim element "reads upon" the accused product. *Laitram Corp. v. Morehouse Indus. Inc.*, 143 F.3d 1456, 1461 (Fed. Cir. 1998).

### 1. Discussion of Legal Standards

#### a. Scope of the Patent

While interpreting the scope of a claim was once the province of the jury, it is now clearly a legal question. *Markman v. Westview Instruments*, 517 U.S. 370 (1996).

When construing patent claims, this Court examines first the language of the claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) ("It is a bedrock principle of patent law that the 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'"). The Federal Circuit has made clear that the claims themselves are the key driver of construction. *Id.* ("Because the patentee is required to 'define precisely what his invention is,' . . . . it is 'unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms.'"). The words of a claim are given their "ordinary and customary meaning," as understood by a person having ordinary skill in the art, at the time of the effective filing date of the patent application. *Id.* at 1312-13.

However, the claim language alone sometimes does not provide sufficiently clear meaning; in such circumstances (and only in such circumstances), the court may then look at the other words within the claim, the specification, the prosecution history, and the prior art. *Id.* Claims "must be read in view of the specification, of which they are a part." *Id.* at 1315. Furthermore, a court "should consider the patent's prosecution history, if it is in evidence." *Id.* at 1317 ("[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be."); see also *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose

of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.'"). Finally, while reliance upon intrinsic evidence is highly emphasized by the Federal Circuit, district courts are also authorized to rely upon extrinsic evidence when necessary, including expert and inventor testimony, dictionaries, and learned treatises. *Phillips*, 415 F.3d at 1317.

### b. Whether Accused Products Fall Within Scope of Patent Claims

The next step of the infringement analysis is to determine whether PSI's accused separators fall within the scope of any of the claims of the '800 Patent, applying the meaning of the terms of the claim as properly construed. *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 758-59 (Fed. Cir. 1984). This is a factual inquiry. *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F. 2d 878, 889 (Fed. Cir. 1998). Importantly, an asserted device or process must literally satisfy each and every element of an asserted claim. *Builders Concrete v. Bremerton Concrete Prods.*, 757 F.2d 255, 257 (Fed. Cir. 1985). Element means each limitation of the claim. *Corning Glass Works v. Sumitomo Elec., USA, Inc.*, 868 F.2d 1251, 1259 (Fed. Cir. 1989). Thus, to find literal infringement, the accused product or method must contain each of the claim elements and their recited limitations. *Signtech USA, ltd v. Vutek, Inc.*, 174 F.3d 1352, 1358 (Fed. Cir. 1999). Literal infringement does not exist if even one claim limitation is not present in the accused product, such that the claim does not read on the accused product. *Litton Sys. v. Honeywell, Inc.*, 140 F.3d 1449, 1454 (Fed. Cir. 1998).

Infringement may also be proven via the doctrine of equivalents, which enables a court to find infringement even when literal infringement is not present, but the accused product is the

7

substantial equivalent of the patented invention. *See Warner-Jenkinson Co. V. Hilton Davis Chem. Co.*, 520 U.S. 17, 26 n.3 (1997). Application of the doctrine of equivalents may allow a patentee to recover for infringement even though the accused device falls outside of the literal scope of the claims, but only where the differences between the innovation and the accused products are insubstantial. *See, e.g., Pall Corp. v. Micron Separations, Inc.*, 66 F. 3d 1211, 1218 (Fed. Cir. 1995). To prove infringement under the doctrine of equivalents, a patentee must present "particularized testimony and linking argument" on a limitation-by-limitation basis showing how the accused infringing device or process is equivalent to the claimed invention. *See, e.g., Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1363 (Fed. Cir. 2005). Equivalence is a question of fact to be decided by the trier of fact. *Interactive Pictures v. Infinite Pictures*, 274 F.3d 1371, 1376 (Fed. Cir. 2001). As discussed *supra*, "summary judgment on the issue of infringement is proper when no reasonably jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005).

**2. Analysis: Independent Claim 1, and Therefore Dependent Claims 2-16, Are Not Infringed by Defendant's Accused Products**

**a. Claim Construction: "barrier means depending vertically downward from the top of said tank"**

The parties dispute the meaning of the following phrase of Claim 1-16: "barrier means depending vertically downward from the top of said tank."

| Claim Term | Defendant's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|---|
| "barrier means depending vertically downward from the top of said tank" | "a barrier that hangs vertically downward from, and is attached to, the top of the tank" | "This element describes a wall or plate that forces the oil-water mixture to flow toward the baffle and then the bottom of the tank before flowing to the outlet end of the tank." |

Defendant PSI resorts to an extrinsic source, a generalist dictionary, to argue that the plain meaning of the term "depends" is "to hang down; be held up by being attached to something above." Defendant's Memorandum, at 23 (citing "Webster's Third International Dictionary," at p. 604). In light of this proffered definition, the Court notes the Federal Circuit's cautionary language, in both *Phillips* and other cases, regarding the weight to be assigned to extrinsic evidence, such as dictionaries. *See, e.g., Philips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005); *Ferguson Beauregard/Logic Controls v. Mega Systems, LLC*, 350 F.3d 1327, 1338 (Fed. Cir. 2003). Defendant PSI also offers another piece of extrinsic evidence, the expert opinion of George Wharton, who defined "depend" to mean "to hang down, for example, a vine depending from a tree." Defendant's Memorandum, Appx. Ex. N., at 3. Defendant also argues that a "plain reading" of the specification shows that the "barrier means" is attached at the top of the tank. Defendant's Memorandum, at 23.

Plaintiff's briefing does not appear to directly challenge Defendant's argued construction. Upon assessment of this claim in the context of the specification, the prosecution history, and the expert reports, the Court finds that Defendant's interpretation is accurate. In particular, the specification assists in arriving at this construction, explaining as follows: "Assembley 62

comprises a barrier member 64 which depends vertically downwardly from the top of the tank and across the entire upper hemisphere of tank 60 to segregate an inlet zone 66 which comprises a relatively small region of tank 60 to the left of the barrier 64." '800 Patent, 7:36-42.

Therefore, the phrase "barrier means depending vertically downwardly from the top of said tank" is hereby construed as meaning, as interpreted by one having ordinary skill in the art at the time of the patent filing, that the barrier means hangs vertically downward from, and is attached to, the top of the tank.

### ii. Infringement or Non-Infringement

PSI argues that the accused separators exhibit a bulkhead attached to the bottom and sides of the tank rather than "depending vertically downwardly" from the top of the tank. Meanwhile, Highland Tank essentially agrees, conceding as follows: "Whether PSI welds its barrier to the lid, its products perform the same function, in the same way, to yield the same result as the barrier means described in claim 1." Doc. No. 96, p. 14. Therefore, Highland Tank has conceded that PSI's products do not meet the plain-language limitation of "barrier means depending vertically downward from the top of said tank" of Claim 1. Additionally, PSI's products would not be covered under Claims 2-16 which include all of the limitations of Claim 1.

As to possible infringement under the doctrine of equivalents as to this limitation, the Court finds that Plaintiff has not met its burden to produce some valid evidence in response to Defendant's showing. The doctrine of equivalents is a judicially developed doctrine created to prevent infringers from making superficial and minor changes to escape infringement liability. *Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005).

Under the doctrine of equivalents, infringement exists if the plaintiff can show, on an

element-by-element basis, that the allegedly infringing device performs substantially the same function in substantially the same way, in order to obtain substantially the same overall result. *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931 (Fed. Cir. 1987). The policy behind the doctrine is to limit the ability of competitors to steal "the essence of an invention, while barely avoiding the literal language of the claims." *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991). The issue of substantial equivalency is a question of fact. *Pennwalt*, 833 F.2d at 936.

Upon review of the evidence before it, the Court finds that the evidence does not establish that a reasonable trier of fact could possibly find equivalency, and thus infringement. Plaintiff states as follows:

> The function of the barrier means is to provide a wall or a separator. Sadler Dep., 42:5-22, Exhibit 17 hereto. It accomplishes that by being mounted to inside of the oil-water separator. *Id.* The result is that separate zones are formed. *Id.* Whether PSI welds its barrier to the lid, its products perform the same function, in the same way, to yield the same result as the barrier means described in claim 1.

Plaintiff's Memorandum, at 14. Conclusive statements by counsel, or by a potential witness, do not create a genuine issue of material fact. *Applied Cos. v. United States*, 144 F.3d 1370, 1375 (Fed. Cir. 2000). In short, Defendant has shown that its accused product does not exhibit this claim limitation, and in response, Plaintiff has failed to rebut Defendant's showing or raise a material issue of fact.

Pursuant to the above analysis, the accused products cannot possibly infringe Claims 1-16. Consequently, the Court elects not to needlessly construe or analyze the remaining raised issues relevant to these claims. Of note, however, upon the Court's review of the briefing and analysis of the patent claims in relation to the product, the Court is comfortable that additional

unresolvable holes exist in Plaintiff's case for infringement.

### 3. Analysis: Claims 17, 18, 19, 20, 21, 22, 23, and 24 are not Infringed by Defendant's Accused Separators

#### a. Claim Construction: "baffle"

##### iii. "baffle"

The parties dispute the meaning of the following phrase of independent Claims 17, and its dependent claims (18-24):"baffle."

| Claim Term | Defendant's Proposed Construction | Plaintiff's Proposed Construction |
|---|---|---|
| baffle | "a flat, upwardly inclined surface against which the feed flow impacts" | does not require a flat surface |

PSI argues that the "baffle" should be construed as "a flat, upwardly inclined surface against which the feed flow impacts." Highland Tank retorts that the claim does not require a "flat" baffle.

PSI cites the following section of the specification in support of its argument: "The baffle is disposed in the inlet chamber and its face, which comprises a flat surface, is inclined upwardly so that it faces towards the inlet nozzle and towards the inlet end of the tank. The baffle is disposed to reduce and isolate inlet turbulence and to relatively evenly distribute the flow over the entire width of the tank. The flat surface of the baffle contributes to reduction of turbulence." '800 Patent, 1:25-32. Also, PSI cites the following section of the specification: "[T]he McCarthy et al. Baffle is corrugated which contributes turbulence, whereas the diffusion baffle of this invention has a flat surface which contributes to laminar flow." '800 Patent: 2: 45-48.

In response, Plaintiff argues that the "baffle" of Claim 17 does not need to be flat. Plaintiff implores the Court that construction begins with interpreting the claims, and invites the

court not to "read undue limitations from the specification into the claim." Specifically, Highland Tank states that the claim language does not say anything about the baffle being flat, and that the exclusion of "flat" from the actual claim language is dispositive.

While Plaintiff's exhortations are correct as general statements, they are completely inapt in this setting, as applied to this specification. Of course, the appropriate starting point in construction is always the way in which the language is used within the claim. *See Pause Tech. LLC v. TiVo Inc.*, 419 F.3d 1326, 1331 (Fed. Cir. 2006). However, Plaintiff's second point is more nuanced. On the one hand, a court must be careful to read a claim term in the context of the entire patent. *Phillips*, 415 F.3d at 1313. On the other hand, though, *Phillips* and other Federal Circuit opinions caution against reading features of one or more enclosed embodiments into claims drafted more broadly. *Id.* at 1323-24; *see also Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1368 (Fed. Cir. 2005). The Federal Circuit itself has described this balance as a "fine line." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004).

In this instance, Highland Tank's complete jettisoning of clear and unmistakable specification language is scarcely understandable and borders on either mistake or advocacy blindness. The entire point of claim construction is to arrive at the acquired meaning of the words in the claim, and that meaning may derive from various sources, especially the particular use of that language within the patent. *V-Formation, inc. v. Benetton Group SPA*, 401 F.3d 1307, 1311 (Fed. Cir. 2005). Here, within the first three paragraphs, the specification contains unmistakable language that facilitates the proper understanding of the term "baffle:" "According to method of the invention . . . . [t]he baffle is disposed in the inlet chamber and its face, which

13

comprises a flat surface . . . ." '800 Patent, 1:19-27. Where in this clear phrasing is any discussion of a "mere embodiment"? Even more aggressive language exists later in the specification, as the inventor distinguishes the McCarthy baffle: "the McCarthy et al. Baffle is corrugated, which contributes turbulence, where the diffusion baffle of this invention has a flat surface which contributes to laminar flow." '800 Patent, 2: 45-48. The Federal Circuit has explained that when the specification obviously explains that the invention, as a whole, does not include a particular feature, that feature must be deemed to be outside of the reach of the language of any individual patent claim, even where the literal language may seem sufficiently broad. *Sci-Med Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001).

In this matter, the unambiguous specification language acts as a dispositive indicator of the boundaries of the invention that was patented, and thus allows the court to settle upon the acquired meaning of the term "baffle": "a flat, upwardly inclined surface against which the feed flow impacts."

Moreover, Highland Tank's claim differentiation arguments are precluded by application of the precedential *Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1115-16 (Fed. Cir. 2002). As in *Fantasy Sports*, the doctrine of claim differentiation, applied here, could only create a presumption that each claim has a different scope to the extent that differing scope is not overcome by the patentee's clear disclaimer of claim scope in the specification. *Id.* The doctrine of claim differentiation cannot operate to broaden claims beyond their correct scope. *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000).

In short, PSI's arguments are far more persuasive, and, correctly interpreted in light of the

clear and unmistakable explanation in the specification, the term "baffle"should be construed as requiring a flat surface. This does not represent an instance where the court is reading a feature of a disclosed embodiment into a more broadly drafted claim. *See, e.g., Saunders Group, Inc. v. Comfortrac, Inc.*, 492 F.3d 1326, 1321-25 (Fed. Cir. 2007). Rather, the inventor's own express acknowledgments in the specification clearly demand that this aspect of the claim be read in light of the specification. *See Innova/Pure Water, Inc. v. Safari Walter Filtration Sys., Inc.*, 381 F. 3d 1111, 1117 (Fed. Cir. 2004).

### b. Infringement or Non-infringement

The parties agree that the accused separators contain a corrugated separator plate. Therefore, the absence of the "flat baffle" limitation is obvious, and literal infringement is not present. No reasonable juror, based upon any available evidence, could decide otherwise.

As to possible infringement under the DOE, discussed by the parties in their briefs,[1] infringement under that doctrine cannot possibly exist as to Claims 17-24, precisely because the baffle in the accused separators is obviously not the "equivalent" of the baffle described in the claims.

Under the DOE, infringement exists if the plaintiff can show that the allegedly infringing device performs substantially the same function in substantially the same way, in order to obtain substantially the same overall result. *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931 (Fed. Cir. 1987). The policy behind the doctrine is to limit the ability of competitors to steal "the

---

[1]Highland Tank argues that it can establish infringement under the DOE. As noted *supra*, the DOE is a judicially developed doctrine created to prevent infringers from making superficial and minor changes to escape infringement liability. *Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005).

essence of an invention, while barely avoiding the literal language of the claims." *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991). The issue of substantial equivalency is a question of fact. *Pennwalt*, 833 F.2d at 936.

Upon review of the evidence before it, the Court finds that the evidence does not establish that a reasonable trier of fact could possibly find equivalency, and thus infringement.

Because each and every limitation of a claim must be found in the accused products, the Court need not continue with its infringement analysis. Rather, the court finds, as a matter of law, that the accused products do not infringe Claim 17, or any of Claims 18-24.

However, it is worth noting, that if the Court were to conduct additional analysis of the other disputed limitations, it would find that the accused products exhibit a single barrier affixed to the sides and bottom of the tank, rather than two separate barriers, and that the accused products do not include barrier means extending from the top of the tank across the upper portion of the tank. In short, without wasting judicial resources by conducting unnecessary construction and analysis in this Opinion, the Court remains comfortable that other substantial holes exist in Plaintiff's infringement arguments.

Moreover, to the extent that Highland Tank would seek to apply a doctrine of equivalents analysis to other limitations where literal infringement did not exist, such efforts would be limited by prosecution history estoppel.[2] In particular, such estoppel appears applicable to the

---

[2]Prosecution history estoppel checks the breadth of application of the doctrine of equivalents, because it precludes a patentee from re-obtaining claim scope of a subject area that the patentee specifically relinquished during prosecution. *Zenith Lab, Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1424 (Fed. Cir. 1994). Whether prosecution history estoppel so applies is a question of law. *La Bounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 867 F.2d 1572, 1576 (Fed. Cir. 1989). During this analysis, the Court views the situation from the standpoint of a competitor to ascertain what that competitor would believe that the prosecution history revealed

16

essential angles, and positioning of certain structural elements described in Claims 17-24.

## VI. Conclusion

Where no issue of material fact exists on the question of infringement, "the Court should utilize the salutary procedure of Fed. R. Civ. P. 56 to avoid unnecessary expense to the parties and wasteful utilization of the jury process and judicial resources." *Barmag Barmer Maschinerfabrik AG v. Maurata Machinery, Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984).

Highland Tank has presented no evidence from which a reasonable trier of fact could reach the conclusion that the accused products infringe any of the asserted claims. Therefore, the Court must rule, as a matter of law, that literal infringement does not exist. Furthermore, Highland Tank's evidence is not sufficient to convince a rational trier of fact that the limitations of the claims of the '800 Patent, as construed in this Opinion, are substantially the same as the features evident in the accused products. In short, upon the evidence presented, the court finds that Defendant PSI is entitled to judgment as a matter of law that its products do not infringe the '800 Patent. The Court further finds that Highland Tank failed to adequately rebut Defendant's persuasive showings. In making this decision at the summary adjudication stage, the Court has acted as the finder of fact upon issues of fact, including the infringement analyses. In so doing, the Court found that a rational trier of fact could not possibly conclude that infringement exists.

For the reasons stated, PSI's motion for summary judgment on the grounds of non-

---

about the scope of the patent, in terms of what scope of the patent claims the patent applicant had surrendered. *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1219 (Fed Cir. 1995). Furthermore, a patent applicant's efforts in distinguishing prior art to secure allowance of a claim presumably give rise to prosecution history estoppel. *Id.* at 1290. Logically, and pursuant to governing law, then, the DOE cannot be a basis for infringement where the territory covered by the argued equivalent is territory that falls within the estoppel. *Southwall Techs, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1994).

infringement is granted.

An appropriate order follows.

## ORDER

**AND NOW**, this 21st day of September, 2010, this matter coming before the Court on Defendant PSI's Motion for Summary Judgment (Doc. No. 79), upon consideration of all relevant briefings, and for all of the foregoing reasons, **IT IS HEREBY ORDERED** that the request for summary judgment of non-infringement is GRANTED.

IT IS FURTHER ORDERED that a status conference shall be scheduled, wherein the Court will consult with the parties prior to setting a trial date for the remaining claims in this action.

BY THE COURT:

_____
KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE